**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**FILED**

JAN 1 0 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **Criminal Case No. 11-102 (GK)** |
| | : | |
| **CHARLES DAUM, *et al.*,** | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

On June 22, 2012, following a 24-day bench trial, this Court convicted the three Defendants.
All three Defendants were convicted of Conspiracy to Obstruct Justice. Defendant Daum was also
convicted of three counts of Obstruction of Justice and two counts of Subornation of Perjury.
Defendants have filed a Renewed Motion to Dismiss, or, Alternatively, for a New Trial [Dkt. No.
273]. In addition, there is a Supplemental Rule 29 Motion of Daaiyah Pasha pending [Dkt. No. 225].
Upon consideration of the Motions, the Government's Opposition [Dkt. No. 277], the applicable
case law, and the lengthy record in this case, the Court concludes that the Motions must be **denied**.

In their Renewed Motion to Dismiss, Defendants argue for dismissal of the Indictment or,
alternatively, for a new trial, because the Government failed to provide them, as required by Brady
v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), with two items
of Brady information prior to trial. Defendants claim, first, that the Government failed to reveal that
trial witness Jerome White, the brother of Delante White, testified as a cooperating witness in
another, unrelated, criminal trial, namely, United States v. Mark Pray, 10-cr-0051, and was
threatened by Pray on the day he was supposed to testify. The Pray case was tried by the Honorable
Rosemary M. Collyer of this District Court, prior to the beginning of the Daum trial. Defendants
claim, second, that the Government failed to disclose the total number and length of meetings that

Delante White and his attorney had with various prosecutors and agents during the investigation of this case and preparation of it for trial.

In Brady v. Maryland, the Supreme Court ruled that the due process clause of the Constitution requires the prosecution to disclose evidence favorable to an accused if that evidence is material to either guilt or punishment without regard to the good faith or bad faith of prosecutors. United States v. Johnson, 519 F.3d 478, 488 (D.C. Cir. 2008). In order to constitute Brady material, "the withheld evidence must be 'material' that is, there must be a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id. at 488 (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). Finally, our Court of Appeals has specifically ruled that information which is merely cumulative or possibly useful for additional impeachment is not typically construed to be Brady material. See United States v. Emor, 573 F.3d 778, 782 (D.C. Cir. 2009). With this basic Constitutional framework in mind, the Court will now address the issues raised by Defendants.

1.      As to the claim regarding the Government's failure to inform them that Jerome White testified as a cooperator in the Pray trial and was threatened by Pray, Defendants have simply received and relied upon incorrect information. As the Affidavits of Matthew P. Cohen, lead Government counsel in the Mark Pray case, and Mark Carroll, counsel for Delante White in the underlying drug case against Delante White, demonstrate, Jerome White never testified in the Mark Pray trial. At the sentencing of Delante White, on October 2, 2012, before the Hon. Paul Friedman of this District Court, Delante White's attorney, Mark Carroll, stated that Jerome White testified in the Mark Pray trial. In his Affidavit, Mr. Carroll admits that he had no personal knowledge of this fact and that his statement was based upon a conversation he had with Jerome White's defense

attorney. Apparently, according to Mr. Carroll, he misunderstood what was said in that conversation. He acknowledged in his Affidavit that he has since learned that Jerome White did not testify in the Mark Pray trial, and that the alleged threat made by Mark Pray to Jerome White actually occurred on the day that Jerome White was to testify in this trial, not the Mark Pray case. Mr. Carroll admits that his statement was in error, but was "based upon an honest misunderstanding." The Court has no reason to question the accuracy of Mr. Carroll's Affidavit.

Given these facts, it is clear that there is no merit to the allegation of a Brady violation regarding testimony by Jerome White, and therefore the Motion must be **denied**.[1]

2.      As to the Defendants' assertion that the Government failed to advise them of the full scope of Delante White's cooperation in connection with this case, the Court does not find a Brady violation. Defendants concede that they were provided with notes of 12 meetings between Delante White and prosecutors, agents, and police officers, but were given no information regarding the length of those meetings or the fact that there were 26 such meetings, each of which lasted three to four hours.

In Mark Carroll's Affidavit, he listed, after reviewing his notes, a total of 26 meetings which took place between Delante White and the Government. Two of those meetings were with attorneys from the U.S. Attorney's Office, who were later recused from the Daum prosecution. The first six of those meetings preceded the date of the Daum Indictment which was April 12, 2011. Eight of the 26 meetings did not include any of the prosecutors who went on to comprise the Daum trial team.

---

[1]      The Government sets forth in some detail what steps Defendants' attorneys could have taken in order to verify Mr. Carroll's statement. Government's Resp. to Defs.' Renewed Mot. to Dismiss, or, Alternatively, for a New Trial 6-7. Foresight is always better than hindsight.

Mr. Carroll's list also indicates that some of the earlier meetings lasted from four to six hours, while many of the later meetings were shorter, sometimes lasting as little as one to two hours.

The Defendants have failed to present any case law, from this jurisdiction or any other, ruling that they were entitled to know the exact number of meetings with Delante White and Government personnel, the numbers and names of the people at those meetings, and the duration of those meetings, during the investigative and pre-trial stages of this case. More significantly, Defendants have failed to show that such information would have in any way changed the outcome in this case. As the Supreme Court said in United States v. Agurs, 427 U.S. 97, 109-10 (1976), the "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." The information which Defendants complain about not receiving was simply cumulative impeachment evidence. The Government made very clear at trial and defense counsel focused on it in what was extensive and effective cross-examination, that Delante White had fully cooperated with the Government. The specifics of the times and number of meetings between Delante White and Government prosecutors would have simply added to the extremely negative impression that Delante White's direct testimony and cross-examination successfully created.

In order to satisfy the standard of materiality set by the Supreme Court, there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Johnson, 519 F.3d at 488 (citation omitted). In United States v. Johnson, 592 F.3d 164 (D.C. Cir. 2010), our Court of Appeals held that "[a] 'probability' reaches the level of 'reasonable' when it is high enough to 'undermine confidence in the verdict.'" Id. at 170 (quotation omitted). In this case, additional evidence of Delante White's lack of credibility

would, obviously, have made no difference in the verdict. As the Court explained in its lengthy oral opinion, the Court already found that Delante White was a totally untrustworthy witness who had no credibility whatsoever.   Knowing exactly how many meetings Delante White had with Government personnel and how long they were would only have added more support for the credibility determination the Court has already made.[2]  Despite the rejection of Delante White's testimony, the Court ruled that the Government had presented other overwhelming evidence of Defendants' guilt and, that, therefore, Delante White's testimony played no role in the final verdict it reached.

3.     Daaiyah Pasha filed a Supplemental Rule 29 Motion arguing that the Government failed to present sufficient evidence in its direct case from which a reasonable fact finder could find guilt beyond a reasonable doubt.[3]  For the reasons given in the Court's Verdict, the Court concludes that the Government did meet its burden of proof and did present sufficient evidence in its direct case from which a reasonable fact finder could find guilt beyond a reasonable doubt.


Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**

---

[2]     The Government also points out that defense counsel never asked Delante White exactly how many meetings he had had with Government personnel, nor who was present at those meeting, nor what was discussed, nor the duration of any of those meetings other than those immediately preceding the trial.

[3]     Oddly, the Government filed no opposition. The Court can only conclude that the Government overlooked this Motion.